40604.   PAPAS v. ROBINSON et al.

DECIDED APRIL 21, 1964—REHEARING DENIED JUNE 22, 1964.

869

*Haas, Holland & Zinkow, William M. Sinrich,* for plaintiff in error.

*Edwards, Bentley, Awtrey & Parker, Fred D. Bentley, Sr., A. Sidney Parker,* contra.

FELTON, Chief Judge. First we shall consider the general grounds.

Plaintiff Otis Robinson testified that the defendant had "contacted" him and met with him for about 30 minutes on the described property about February 15, 1961; that the defendant had told him that he had the property leased out and was required by the lease to have it filled and graded to road level, pointing out to the witness certain stobs and describing exactly how he wanted the job done; that the witness quoted him a price of $3,000 for the job, telling him that he might be able to get some dirt closer—the charge varying with the distance hauled; that the defendant said that he would let him know when he was ready to have the work done; that he had had no further communication with the defendant personally, either before or after that conversation.

Plaintiff Curtis Robinson testified that, although he had never met the defendant, his voice, accent, etc. had been described to to him by his father, the co-plaintiff, and he recognized his voice when the defendant called him on the telephone about two months before leaving for Greece; that an earlier "contract" had been made between the defendant and the witness's father around February 15, but that this contract was never "carried out"; that

he didn't have much education and was not positive about the various dates testified to; that the defendant had agreed over the phone to the witness's quoted cost of $2.50 per load, plus $12.50 an hour for a tractor to distribute the dirt, but had told him that he didn't need the dirt at that time and that he would let him know when to go to work; that the cost of the contract was made on a per load and hourly basis because no one knew in advance how much dirt would be required; that Mrs. Eileen White, whose voice he also recognized, called him on the telephone on October 2, 1961, and, holding herself out to be representing the defendant, confirmed the terms of the purported contract, which included hauling and packing the dirt, and authorized the plaintiffs to commence the work, which they did on that day; that she was on the job site when the work was commenced, checked with the plaintiffs concerning the progress of the work almost daily by telephone and, when the work was completed, she considered it reasonable and seemed pleased with it, accepted it for the defendant and received the $2,280 bill from the witness plus the tickets for each load delivered (a total of 672), which were made out and signed by a Mr. Coley, who supervised the job; that Mrs. White purported to represent the defendant, and the plaintiffs, having no contrary information, relied on her agency; that the plaintiffs had not gotten any note or other security from the defendant.

Melvin Brown, driver of the tractor and "sheep-foot," or packer, testified that he had charged and had been paid by plaintiff Otis Robinson $500 for his services in connection with this job.

Mr. B. A. Coley, supervisor of the construction company which was constructing a building on the lot for the lessee, testified that he had, by agreement with Mrs. White, supervised the plaintiff's job and turned in to her, as a receipt, a signed ticket for each load of dirt delivered and that the plaintiffs had satisfactorily completed the job according to Mrs. White's instructions and a plat furnished him by his company.

Mrs. Eileen B. White testified that she was a licensed real estate broker; that the defendant "contacted" her early in 1961, explained that he was going out of the country for five years and requested that she obtain a lease from a national tenant, the Mc-

Donald Corporation, for whom she was a leasing agent; that she inspected the property and discovered the need for landscaping, which the defendant assured her he would have done; that she drew up a lease between the defendant, as lessor, and the Mc-Donald Corporation, as lessee, in which she put a protective clause, requiring the lessor to fill the hole on the property; that on April 1, 1961, the defendant executed the lease, as well as a separate agency agreement, which provided that the defendant was to pay her, as compensation for services rendered in procuring the lease, the first month's rent thereafter and in addition 5% of all rentals thereafter paid and he assigned to her the right to collect such compensation from the lessee; the agreement further provided that Mrs. White was "a party to this aforesaid lease solely for the purpose of enforcing his [lessor's] rights under this paragraph and it is understood by all parties hereto that agent is acting solely in the capacity as agent for lessor, to whom lessee must look as regards all covenants, agreements and warranties herein contained, and that agent shall never be liable to lessee in regard to any matter which may arise by virtue of this lease"; that, prior to the defendant's leaving the country, he had told her that he would call her and let her know whom he had selected to do the job; that he called her and gave her the plaintiffs' names and phone number, said they had agreed to fill the lot at a cost of between $2.00 and $2.50 per load with no additional cost for compacting the dirt, requested that the plaintiffs be "contacted" but that the lot was not to be filled until "the last possible moment" and instructed her to mail him the bill upon the completion of the job; that he told her that he trusted the plaintiffs but that she could have a supervisor on the job; that, upon being notified by the lessee after the defendant had left the country that they needed the lot to be filled, she "contacted" the plaintiffs, assured them that she was the defendant's agent and that she would see to it that they got paid, verified the "contract" price of $2.00 to $2.50 per load, instructed them to commence working and finally accepted the job on the defendant's behalf upon its completion; that she did not receive any communication from the defendant until the work was virtually completed; that she mailed him the bills by certified mail,

receipt for which she received, and requested that he make arrangements for payment, but that the defendant had not sent her a check for payment of the plaintiffs' bill, nor had she paid the plaintiffs.

Tom A. Trachani, vice-president of the construction company which built the restaurant on the property for the lessee, testified that, prior to the commencement of construction on the building, he had met on the site with the defendant, Mrs. White, a grading contractor, and a representative of the lessee, and that the defendant had not at that time decided who was to do the grading; that on the following day the defendant notified him by telephone that "he had settled on the grading with some Robinsons and that Mrs. White would handle it for us."

Counsel for the defendant introduced into evidence the interrogatory of the defendant, in which he testified that he did not authorize the work done by the plaintiffs; was out of the country at the time the work was performed; did not approve or ratify the work; had not met either of the plaintiffs; might have had one telephone conversation with one of the plaintiffs; had not, to his knowledge, had any telephone conversation with any member of their company; had not [then later *had*] had a telephone conversation with anyone concerning the price of fill for land; and that there was no further action on this telephone conversation.

The stipulation, that "the issue is whether or not there was a contract," is construed to mean that the only question involved was whether a valid (exclusive of the question of the applicability of the Statute of Frauds) oral contract was entered into, thereby eliminating the question of partial performance by the plaintiffs. The applicability of the Statute of Frauds is assumed to have been eliminated by the stipulation for the reason that it was apparent to both parties that a full performance by one side would take it out of the statute if a contract was entered into. The stipulation in regard to the amount and fairness of the contract, together with the facts, eliminates the question of definiteness as to the amount of dirt, the length of time required to pack the dirt and the size and capacity of the dump truck. The jury was authorized to find that the defendant agreed with plaintiff Curtis Robinson on the terms of the contract, which were

that the charge for supplying and hauling the dirt was to be at the rate of $2.50 per load plus $12.50 per hour for a tractor to distribute the dirt, and that Mrs. White would notify the plaintiffs when to begin work. There is no evidence that Mrs. White was given either actual or apparent authority to contract at $2.50 per load plus $12.50 per hour for the tractor. Although the amount of verdict, $2,280, was $100 more than was authorized by the evidence (672 loads @ $2.50 plus $500 for the tractor), this error is not reversible inasmuch as it will not likely reoccur upon the second trial of the case, hereinafter granted on certain of the special grounds. The general grounds are without merit.

■ Special ground 4 of the amended motion for a new trial contends that the court erred in charging the jury concerning the authority which one has who assumes the duties and responsibilities of managing and controlling another's property. It is contended that, while this was a correct statement of the abstract law, it represents an expression of opinion on the part of the court that the defendant had so authorized someone to manage his property, which was an issue to be determined under the evidence. The question of what is meant by managing property was not an issue in the case. The evidence showed that Mrs. White's authority to give the plaintiffs the word to go ahead with the contract was based upon specific authority from the defendant, rather than upon apparent authority. The charge was therefore error.

This ground also assigns error on the court's ruling excluding from evidence a letter from the defendant to Mrs. White, dated October 7, 1961, after the plaintiffs had begun work under the contract. This letter was properly excluded as a self-serving declaration. Even if it was error to exclude the letter, it was not harmful. The pertinent part merely says that the defendant was afraid that there would be some misunderstanding regarding the fill, that he did not authorize any fill until he was satisfied it was necessary, and that he had given the plaintiffs' names to Mrs. White so that if and when the work became necessary they would be available. Nothing in the letter negated Mrs. White's authority to tell the plaintiffs to commence work under the contract at such time when she determined it to be necessary in

accordance with the defendant's expressed instructions. Special ground 4 is meritorious because of the erroneous charge.

■ Special ground 5 assigns error on the court's charge, to the effect that where an agent exceeds his authority the principal may not ratify in part and repudiate in part. This charge was error because there was no evidence of ratification. Special ground 5 is meritorious.

■ Special ground 6 assigns error on the following charge: "Whether a person is or is not an agent of another is a question of fact and is an issue that is to be determined by the jury from all the evidence in the case, both the oral testimony of witnesses and documentary evidence admitted during the trial of the case. Agency can not be proven by the declaration or representation made by a purported agent alone. The existence or non-existence of agency, *or* the scope of the agent's authority, I charge you is all a question of fact for you to determine." (Emphasis supplied.) It is contended by the plaintiff in error that the use of *"or"* in the last sentence was misleading in that it gave the jury the impression that they must determine either (a) the existence or non-existence of agency, *or* (in the alternative) (b) the scope of the agent's authority. While this instruction would be technically correct in the event the jury found a non-existence of agency, in which case the scope of the authority would not be left as an issue, it would not be strictly accurate in the event that agency was found to exist, which finding was authorized by the evidence, in which case the scope of authority would also have to be considered. Special ground 6 is meritorious.

■ Special ground 7 assigns error on a charge of the court which states a contention of the plaintiffs to be that they were authorized to proceed with the work by the defendant in a telephone conversation, whereas their actual contention was that the defendant had agreed upon the terms before leaving the country, and that then his alleged agent, Mrs. White, had authorized them over the telephone to begin work. Although the court correctly gave the plaintiffs' contention in the next paragraph of the charge, the mistake was not specifically pointed out and corrected. Thus the jury was left to choose between the conflicting contentions. Special ground 7 is therefore meritorious.

■ Special ground 8 assigns error on the court's instruction that if the jury found with reasonable certainty the dates of the demand for payment, the plaintiffs would be entitled to 7% (interest) from that date to the date of the verdict. The plaintiffs' original petition contained a prayer for interest but this was stricken by amendment, therefore this charge was not authorized by the pleadings. Although the court instructed the jury to "strike that" immediately after giving this charge, the fact that it influenced the verdict is indicated by their inclusion of interest in the verdict. Special ground 8 is meritorious.

■ Special ground 9 assigns error on the court's admission in evidence of the written instrument attached to the lease between the lessee and the defendant-lessor, set out in substance in Division 1, hereinabove, and on the charge set out in special ground 5, ruled on in Division 3, hereinabove. The admission of the instrument was harmful because the written authority did not include the authority to enter into the hauling and grading contract. Special ground 9 is meritorious.

■ Special ground 10 complains of the exclusion from evidence of the letter from the defendant to Mrs. White, which is described hereinabove in Division 2. As was there held, the letter was properly excluded as a self-serving declaration. Special ground 10 was properly overruled.

■ Special ground 11 assigns error on the court's ruling excluding from evidence the reading of questions and answers from interrogatories previously submitted to one of the plaintiffs. This ground was properly overruled because the interrogatories, sought to be used for the purpose of impeachment, were not put into evidence nor are they included in this ground, thus making it impossible to determine whether or not there was contradictory testimony.

■ Special ground 12 complains of the testimony of Mrs. White as to her employment as an agent of the defendant, on the grounds that (a) the written document itself was the highest and best evidence of agency; (b) the agent is not competent to testify as to the existence or scope of her own agency; and (c) the answers were self-serving declarations. While the unsworn declarations of an agent are incompetent to prove agency, yet, even

in the absence of other evidence of agency, the agency can be proved by the agent's sworn testimony. *Friese v. Simpson & Harper,* 15 Ga. App. 786, 788 (84 SE 219); *Bell v. Washam,* 82 Ga. App. 63 (1) (60 SE2d 408); *Terminal Trans. Co. v. Decatur Truck &c. Co.,* 90 Ga. App. 859, 864 (84 SE2d 494); *Cheeley v. Wilcher,* 106 Ga. App. 680 (127 SE2d 844). Special ground 12 was properly overruled.

Special grounds 13 and 14 assign error on the court's rulings excluding defendant's exhibits 2 and 3. Exhibit 2 was a letter from the defendant to Rebecca Shealy (now Rebecca Furstnow), dated August 21, 1961, in which he asked her to handle his affairs while he was away, authorized her to act as his agent and power of attorney, and asked her to "keep an eye on" various named business obligations, among which is the McDonald Corp. lease. Exhibit 3 was a handwritten list by the defendant of various matters which Mrs. Shealy was supposed to handle for him, the only reference to the present matter being the inclusion of Mrs. White's name, address and telephone number. Aside from the fact that these exhibits were not inconsistent with the defendant's grant of authority to Mrs. White to have the work started, they were both properly excluded as self-serving declarations. Special grounds 13 and 14 were properly overruled.

Special grounds 4, 5, 6, 7, 8 and 9 being meritorious, the court erred in overruling the motion for a new trial as amended.

*Judgment reversed. Pannell, J., concurs. Frankum, J., concurs in the judgment.*